ANNIE M. HALE & another, executors, *vs.* H. MORTIMER
HERRING & others.

Bristol. January 23, 1911. — March 3, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Devise and Legacy.    Trust.    Rule against Perpetuities.*

A clause in a will directed the executor in substance to carry on the testator's busi-
ness as the testator previously had carried it on, that one seventh of the profits
of each year's business should " be credited to the account of " each of five per-
sons, one of whom was a son and one a daughter of the testator, and to pay one
seventh of the annual profits each to the son and the daughter ; that the amounts
credited in the accounts specified should be allowed to accumulate until the
accumulation in each account should equal one seventh of the appraised value
of the business, when each of the three persons other than the son and the
daughter should receive a one seventh undivided interest in the business " pro-
vided that if either of said parties should die or desire to retire from said busi-
ness, he or his executors or administrators shall be entitled to draw the amount
of profits then credited to his account." *Held,* that the clause was not void as
contrary to the rule against perpetuities.

A clause in a will directed the executor in substance to carry on the testator's busi-
ness as the testator previously had carried it on, that one seventh of the profits
of each year's business should " be credited to the account of " each of five per-
sons, one of whom was a son and one a daughter of the testator, and to pay one
seventh of the annual profits each to the son and the daughter ; that the amounts
credited in the accounts specified should be allowed to accumulate until the ac-
cumulation in each account should equal one seventh of the appraised value of
the business, when each of the three persons other than the son and the daughter
should receive one seventh undivided interest in the business " provided that, if
either of said parties should die or desire to retire from said business, he or his
executors or administrators shall be entitled to draw the amount of profits then
credited to his account." The son and the daughter survived the testator. One
of the other three persons designated ceased to be connected with the business be-
fore the testator's death, a second survived the testator but died before the debts
of the estate were paid ; and the third, after the debts of the estate were paid but
before the accumulation of one seventh of the profits of the business equalled
one seventh of the appraised value of the business, demanded a transfer of a one
seventh interest in the business. *Held,* that no such transfer should be made.

A clause in a will directed the executor in substance to carry on the testator's busi-
ness as the testator previously had carried it on, that one seventh of the profits
of each year's business should " be credited to the account of " each of five per-
sons, one of whom was a son and one a daughter of the testator, and to pay one
seventh of the annual profits each to the son and the daughter ; that the amounts
credited in the accounts specified should be allowed to accumulate until the
accumulation in each account should equal one seventh of the appraised value of
the business, when each of the three persons other than the son and the daughter
should receive one seventh undivided interest in the business " provided that, if

either of said parties should die or desire to retire from said business, he or his executors or administrators shall be entitled to draw the amount of profits then credited to his account." The son and the daughter survived the testator. One of the other three persons designated ceased to be connected with the business before the testator's death, and a second survived the testator but died before the debts of the estate were paid. *Held*, that neither the first nor the estate of the second of such two beneficiaries was entitled to any share of the business or of its profits.

A clause in a will directed the executor in substance to carry on the testator's business as the testator previously had carried it on, that one seventh of the profits of each year's business should "be credited to the account of" each of five persons, one of whom was a son and one a daughter of the testator, and to pay one seventh of the annual profits each to the son and the daughter; that the amounts credited in the accounts specified should be allowed to accumulate until the accumulation in each account should equal one seventh of the appraised value of the business, when each of the three persons other than the son and the daughter should receive one seventh undivided interest in the business "provided that, if either of said parties should die or desire to retire from said business, he or his executors or administrators shall be entitled to draw the amount of profits then credited to his account. . . . All book accounts, stock, &c., appertaining to said business are to be included in the appraisal of it, subject to the payment of my debts, which are to be first paid from said business." *Held*, that the son and the daughter were not entitled to draw anything from the profits of the business until the debts were paid.

A clause in a will directed the executor in substance to carry on the testator's business as the testator previously had carried. it on, that one seventh of the profits of each year's business should "be credited tò the account of" each of five persons, one of whom was a son and one a daughter of the testator, and to pay one seventh of the annual profits each to the son and the daughter; that the amounts credited in the accounts specified should be allowed to accumulate until the accumulation in each account should equal one seventh of the appraised value of the business, when each of the three persons other than the son and the daughter should receive a one seventh undivided interest in the business " provided that, if either of said parties should die or desire to retire from said business, he or his executors or administrators shall be entitled to draw the amount of profits then credited to his account. I direct my said executors to invest any surplus profits not needed in said business for the benefit of said parties in some safe and secure manner. All book accounts, stock &c., appertaining to said business are to be included in the appraisal of it, subject to the payment of my debts, which are to be first paid from said business." The son and the daughter survived the testator. One of the other three persons designated ceased to be connected with the business before the testator's death, a second survived the testator but died before the debts of the estate were paid. The third remained in the business. On a bill by the executor for instructions as to how the profits should be credited and in what manner the accounts should be kept, it was *held*, that debts of the testator first should be paid, that thereafter five accounts should be kept, each of which should be credited each year with a one seventh part of the profits until the last of the three persons other than the son and daughter dies or retires from the business, or until the amount so credited to his account equals one seventh of the appraised value of the business. Upon the happening of either of those contingencies and the conveyance to him of one seventh part or interest in the business or the drawing out by him or by his estate of the amount of profits credited to his account, the trust will terminate.

In the meantime, if the shares of the income to be credited as aforesaid are not needed in the business, they must be invested, in accordance with the direction of the testator, in some safe and secure manner for the benefit of the parties interested.

MORTON, J. This is a bill in equity * for instructions in regard to the construction of the seventh clause of the will of Oscar M. Draper. The clause is as follows: "Seventh, It is my wish and I hereby direct my executors to carry on my business in the manner I have heretofore done; and I direct that one-seventh part of the profits of each year's business shall be credited to the acount of H. Mortimer Herring, one-seventh to the account of M. J. Dunn, one-seventh to the account of O. B. Bestor, one-seventh to [the] account of Annie M. Hale, and one-seventh to the account of Raymond V. Draper; said Annie M. Hale and said Raymond V. Draper shall each be entitled to draw one-seventh part of the annual profits of said business. Said one-seventh parts of the profits aforesaid are to be credited to the said accounts, until the amount of each account shall equal one-seventh part of the appraised value of said business, and thereupon my executors shall convey to H. Mortimer Herring, to M. J. Dunn and to O. B. Bestor, each, one undivided seventh part or interest in said business; provided that, if either of said parties should die or desire to retire from said business, he or his executors or administrators shall be entitled to draw the amount of profits then credited to his account.

" I direct my said executors to invest any surplus profits not needed in said business for the benefit of said parties in some safe and secure manner. All book accounts, stock, &c., appertaining to said business are to be included in the appraisal of it, subject to the payment of my debts, which are to be first paid from said business."

The case was heard by a single justice who filed a memorandum of his rulings in detail and ordered that a decree be entered in accordance therewith, but at the request of the parties reported the case to this court. If the rulings were right, a decree is to be entered accordingly. We think that the rulings were correct.

---

* Filed in the Supreme Judicial Court on November 29, 1909, where it was heard by *Rugg,* J.

It is admitted or found that the debts of the estate have been paid, but there has been no substantial accumulation of profits beyond that; that M. J. Dunn above-named severed his connection with the business before the testator's death, and, after the allowance of the will, transferred to Edwin E. Hale, one of the defendants, all his interest under the will in and to the estate of the testator; that O. B. Bestor named in said seventh clause died in 1902, after the testator but before the debts due from the estate had been paid; and that Raymond V. Draper has transferred his interest in trust to the defendant Fred H. Williams. Herring is still living and is still connected with the business and contends that he is entitled to a transfer of a one seventh interest therein.

The first question is whether the clause is void under the rule against perpetuities or in restraint of alienation. The persons named as beneficiaries were all living at the death of the testator and it is plain that the interests of the legatees vested, if at all, during their lives, and that there has been no time since the death of the testator when the property could not have been conveyed by the joint action of all parties interested. The clause is therefore valid. We do not deem it necessary to consider whether the question became *res adjudicata* in consequence of proceedings in the Probate Court that were not appealed from.*

The next question relates to the right of Herring to demand a transfer of one seventh part or interest in the business. By the clause in question the testator directed his executors to carry on the business as he had done and, subject to the payment of his debts, to credit to the accounts of Herring, Dunn, Bestor, Annie M. Hale and Raymond V. Draper each one seventh part of the profits of each year's business. Said Annie M. Hale and Raymond V. Draper were each to be entitled to draw one seventh part of the annual profits. The profits to be credited to the accounts were to be so credited until the amount of each account should equal one seventh of the appraised value of the business, when the executors were to convey to Herring, Dunn and Bestor each one undivided seventh part in the business; provided that if

---

* Under a previous bill for instructions, the Probate Court had entered a decree that the clause was valid.

either of "said parties," meaning thereby, we think, either Herring, Bestor or Dunn, should die or desire to retire from the business he or his executors or administrators should be entitled to draw the amount of profits then credited to his account. It is plain, we think, that Herring is not now entitled to the transfer of an undivided seventh part or interest in the business. The testator's intention clearly was that there should be no transfer until each account was equal to one seventh of the appraised value of the business, though if either of the parties died or desired to retire from the business he or his executors or administrators would be entitled to draw out the amount then credited to his account.

A question is presented as to what, if any, interest Edwin E. Hale takes by virtue of the transfer to him by M. J. Dunn of his interest in the estate. Dunn was connected with the business when the will was executed, but severed his connection with it before the testator's death. Manifestly, we think, the condition of things contemplated by the testator as necessary to exist in order to vest any interest in the business or profits in Dunn did not exist at the time of the attempted transfer by him to Hale and nothing therefore passed by it. He had nothing which he could transfer. The same is true of O. B. Bestor at the time of his death.

Another question presented is whether Annie M. Hale and Raymond V. Draper, children of the testator, are or are not entitled each to draw one seventh of the annual profits of the business before the debts are paid. There is ground for the argument that it was not the intention of the testator to postpone payment to them till that time arrived. But the scheme of the testator as expressed in the will seems to have been that the executors should carry on the business as he had carried it on till the debts were paid, and 'that then one seventh of the annual profits should be credited each year to each of the five accounts named and Annie M. Hale and Raymond V. Draper should each be entitled each year to draw one seventh of the profits. This appears, we think, from the direction with which the clause concludes that the executors are to include in the appraisal "all book accounts, stock, &c., appertaining to said business . . . subject to the payment of my debts, which

are to be first paid from said business," as well as from what is contained earlier in the clause. The direction is express that all his debts are to be first paid from the business. It is possible that the construction might be different if the facts relating to the situation and circumstances of the testator and his family appeared. But there is nothing in the record pertaining thereto. The result is that Annie M. Hale and Raymond V. Draper are not entitled to draw any of the profits before the debts are paid.

Lastly, in view of the conflicting claims that are made, the executors desire to be instructed how the profits shall be credited and in what manner the accounts shall be kept. It may be well doubted whether those are matters upon which the plaintiffs are entitled to instructions, but we nevertheless proceed to consider them. The executors are to hold the property in trust and carry on the business and pay first the testator's debts, if they have not been paid, though we understand, as already observed, that that has been done. After the debts are paid they are to permit the two children, as we construe the will, to draw annually one seventh each of the profits. If the debts have been paid or, if not, after they are paid, five accounts will have to be kept, as they would have been if Bestor and Dunn had continued to be connected with the business, each of which will be credited each year with one seventh part of the profits until Herring dies or retires from the business, or until the amount so credited to his account equals one seventh of the appraised value of the business. Upon the happening of either of those contingencies and the conveyance to him of one seventh part or interest in the business or the drawing out by him or by his estate of the amount of profits credited to his account, the trust will terminate. In the meantime, if the shares of the income to be credited as aforesaid are not needed in the business, they must be invested in accordance with the direction of the testator, in some safe and secure manner, for the benefit of parties interested.

*Decree accordingly.*

*F. S. Hall,* for Annie M. Hale and Edwin E. Hale.

*H. E. Ruggles,* (*J. B. Crawford* with him,) for H. Mortimer Herring.

*F. H. Williams,* for Fred H. Williams, trustee, and Raymond V. Draper.